## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert Lennes,<br><br>        Plaintiff,<br><br>v.<br><br>Sunrise Credit Services Inc.,<br><br>        Defendant. | Case No.: 0:22-cv-3175<br><br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

1.    The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.    This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 et seq., by Defendant and its collection agents in their illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION

3.    Jurisdiction of this Court arises under U.S.C. § 1692k(d), 15 U.S.C. § 1681, 28 U.S.C. § 1367 for pendent state law claims, and common law.

4.    Venue is proper because the acts and transactions occurred here, Plaintiff resides in Minnesota, and Defendant transacts business here.

5.    Defendant has transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff by means of interstate commerce while Plaintiff was located within and permanently residing within the State of Minnesota.

6.    Defendant has transacted business within the State of Minnesota by operating a collection agency, making collection calls into Minnesota, and directing debt collection activities to Minnesota.

## PARTIES

7.    Plaintiff Robert Lennes (hereinafter "Plaintiff") is a natural person who resides in the County of Anoka, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

8.    Plaintiff has suffered an injury in fact that is fairly traceable to each Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

9.    Defendant Sunrise Credit Services Inc. ("Defendant") is a foreign corporation formed under New York law and a collection agency licensed in Minnesota, operating in this state from a principal executive office address of 260 Airport Plaza, Farmingdale, NY 11735.

10.   Defendant's Registered Agent is Robert M. Lindstrom PA, located at 3601 Park

Center Blvd, Minneapolis, MN 55416.

11.    Defendant uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

12.    Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13.    Defendant and its employees and agents directly and indirectly participated in the unlawful efforts to collect an alleged debt from Plaintiff that are more further described in this complaint.

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

14.    Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions. Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

15.    Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

16.    The FCRA was created to "ensure fair and accurate credit reporting, promote

efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

17.   The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced her intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

18.   Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

19.   Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

20.   The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

21.   An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living

standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

22.     Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. (Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf).

## **FACTUAL ALLEGATIONS**

23.     Sometime on or before July 2022, Plaintiff allegedly incurred a financial obligation, namely, cable television services with Charter Communications, that was for personal, family and household purposes and is a debt as that term is defined under 15 U.S.C. § 1692a(5) ("debt").

24.     Plaintiff disputes this alleged debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect to this debt and to the claims made herein.

25. Plaintiff does not owe this alleged debt and does not know who incurred it in Plaintiff's name.

26. Plaintiff has never been a customer of Charter Communications and has no business or other relationship with it or the Defendant.

27. Plaintiff is a victim of identity theft and/or mistaken identity and has repeatedly disputed this alleged debt directly with each of the three major credit reporting agencies, Experian, Equifax, and Trans Union.

28. Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendant for collection from Plaintiff.

### Defendant's Illegal "Debt Parking" on Plaintiff's Credit Reports

29. Regulation F of the FDCPA, 12 CFR §1006.30(a)(1) states in pertinent part:

   **(a) Required actions prior to furnishing information.**

   **(1) In general.** Except as provided in paragraph (a)(2) of this section, a debt collector must not furnish to a consumer reporting agency, as defined in section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f)), information about a debt before the debt collector:

   **(i)** Speaks to the consumer about the debt in person or by telephone; or

   **(ii)** Places a letter in the mail or sends an electronic message to the consumer about the debt and waits a reasonable period of time to receive a notice of undeliverability. During the reasonable period, the debt collector must permit receipt of, and monitor for, notifications of undeliverability from communications providers. If the debt collector receives such a notification during the reasonable period, the debt collector must not furnish information about the debt to a consumer reporting agency until the debt collector otherwise satisfies paragraph (a)(1) of this section.

30.     Sometime on or around July 5, 2022, Defendant reported this alleged debt on Plaintiff's consumer credit reports with Trans Union, Experian, and Equifax ("bureaus").

31.     Defendant did not communicate with Plaintiff in any manner, either by telephone call, electronic message or by letter, prior to placing these items on his consumer reports with the bureaus in violation of Reg. F of the FDCPA.   12 CFR § 1006.30(a)(1).

32.     The above-described communications and conduct from Defendant to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692f, and 1692f(1), amongst others.

***Plaintiff's Written Credit Reporting Disputes of Defendant's Alleged Debt***

33.     On or about September 10, 2022, Plaintiff disputed this alleged debt that was appearing on his Equifax credit report, and being furnished by Defendant, in writing and directly to Equifax, pursuant to the furnisher dispute requirements of 15 U.S.C. § 1681s-2(b).

34.     Thereafter, a review on November 27, 2022, showed that the Defendant's negative credit reporting regarding this alleged debt was removed by Defendant from Plaintiff's Equifax report.

35.     On or about September 10, 2022, Plaintiff disputed this alleged debt that was appearing on his Trans Union credit report, and being furnished by Defendant, in

writing and directly to Trans Union, pursuant to the furnisher dispute requirements of 15 U.S.C. § 1681s-2(b).

36.     Thereafter, a review on November 27, 2022, showed that the Defendant's negative credit reporting regarding this alleged debt was removed by Defendant from Plaintiff's Trans Union report.

### *FCRA Violations by Defendant on Experian Credit Report*

37.     On or about September 10, 2022, Plaintiff disputed this alleged debt that was appearing on his Experian credit report, and being furnished by Defendant, in writing and directly to Experian pursuant to the furnisher dispute requirements of 15 U.S.C. § 1681s-2(b).

38.     Thereafter, a review on November 27, 2022, showed that the Defendant's negative credit reporting regarding this alleged debt was still being reported by Defendant from Plaintiff's Experian report.

39.     Plaintiff disputed this account directly with Experian, after Defendant had first furnished it to this consumer reporting agency, as a prerequisite to preserving Plaintiff's rights under the FCRA.  15 U.S.C. § 1681s-2(b).

40.     Despite such written dispute under the FCRA from Plaintiff, Defendant has not removed the negative tradeline related to this account from Plaintiff's credit report with Experian and instead confirmed it as accurate and continued to illegally add interest to the disputed and unliquidated balance.

41.    After Plaintiff's initial written dispute, upon good faith information and belief, Experian forwarded Plaintiff's dispute information to Defendant for investigation as required by 15 U.S.C. § 1681(a)(2).

42.    Upon good faith information and belief, Experian sent an automated consumer dispute verification ("ACDV") to Defendant regarding the disputed account on this alleged debt.

43.    Sometime thereafter, Plaintiff received information back from Experian indicating that it had received Plaintiff's written dispute of this fraudulent account but confirmed it as accurate with Defendant.

44.    According to Experian, Defendant verified that the disputed account belonged to Plaintiff and was accurately reporting on the credit report, in violation of 15 U.S.C. § 1681s-2(b).

45.    Defendant's credit reporting on Experian's consumer report on Plaintiff adversely and/or negatively affected Plaintiff's credit profile when Defendant was aware that Plaintiff's dispute was legitimate, especially in light of the fact that the disputed item had already been removed from two of the three bureaus.

46.    As a credit report furnisher, Defendant violated 15 U.S.C. §1681s-2(b) when it received the notification of dispute from Experian concerning the Plaintiff's disputed account and thereafter failed to conduct a reasonable investigation and failed to delete the fraudulent account.

47.    The account tradeline on Plaintiff's Experian credit report also increased the claimed amount due and owing to $429 and indicated that Defendant had updated

the balance due as of September 26, 2022, despite the fact that Plaintiff had disputed this debt directly with Experian on September 10, 2022.

48.   As a result of Defendant's inaccurate and malicious credit reporting, Plaintiff has suffered reduced credit, emotional distress, embarrassment, frustration, distraction from work, loss of sleep, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

49.   Defendant's false and negative credit reporting on the Plaintiff's Experian consumer report caused Plaintiff's credit score to go down during this time frame.

50.   Plaintiff takes great care in working and guarding his credit report/score and is now embarrassed and humiliated that his score is not as good as it should be without the Defendant's false adverse account on the Experian credit report.

51.   Defendant's conduct has caused Plaintiff to delay refinancing opportunities to obtain the best possible rates and/or obtaining other credit until the Defendant's adverse and harmful reporting is removed from his credit profile with Experian.

52.   As a furnisher of consumer reporting information, Defendant failed to conduct a reasonable reinvestigation, or follow the procedures required by FCRA, 15 U.S.C. § 1681s-2(b), in regard to Plaintiff's dispute.

53.   Defendant negligently failed to comply with the requirements of the FCRA.

54.   As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including damage to credit worthiness, lost opportunity to receive credit, damage to reputation, emotional distress, wasted time, and interference with Plaintiff's normal and usual activities

for which Plaintiff seeks damages in an amount to be determined by the jury, as well as attorney fees under 15 U.S.C. § 1681o(a).

55.   Defendant willfully failed to comply with the requirements of the FCRA.

56.   As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including damage to credit worthiness, lost opportunity to receive credit, damage to reputation, emotional distress, wasted time, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury, as well as attorney fees under 15 U.S.C. § 1681n(a).

57.   Plaintiff is entitled to attorney's fees and costs from Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

### *Failure to Provide Required Notices Under the FDCPA*

58.   Defendant failed to provide Plaintiff with the notices required by 15 U.S.C. § 1692g within five days of its initial collection communications with Plaintiff.

59.   The failure to provide these notices by Defendant to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### *Defendant Falsely Credit Reports the Account and Adds Illegal Interest Charges*

60.   Defendant illegally added interest to this debt and falsely reported interest as due and owing on this account on Plaintiff's consumer credit reports, despite the fact

that Plaintiff has vigorously disputed the basis and amount of this debt making it an unliquidated amount.

61.   Plaintiff disagreed with the Defendant's assertion about interest on this disputed debt, never agreed to pay this interest or the principal amount and refused to pay this alleged debt.

62.   In November 2022, Plaintiff reviewed his consumer credit reports and noted an entry from Defendant on the Experian report that indicated that this disputed $3,249 debt with Defendant had now inexplicably increased to $3,678.

63.   Defendant repeatedly illegally added interest and/or late fees on this alleged debt, increasing the debt from its original amount by at least $429.

64.   The FDCPA prohibits to addition of any amount over and above the principal amount of the debt unless that additional amount is permitted by the contract underlying the debt or otherwise permitted by law.

65.   Plaintiff never agreed to pay interest in any amount on this alleged debt because he did not agree that he even owed the alleged debt and disputed it.  See *Tate v. Ballard,* 243 Minn. 353, 360, 68 N.W.2d 261, 266 (1954) ("Liability for interest is purely contractual, and a person is not chargeable therewith unless he has agreed to its imposition. County of Redwood v. Winona & St. Peter Land Co., 40 Minn. 512, 41 N.W. 465, 42 N.W. 473.")

66.   There was no agreement between Plaintiff and Defendant underlying this debt which permitted these collection fees by Defendant and these fees are not otherwise permitted by law.

67.   It was a false and deceptive debt collection practice for Defendant to misrepresent the amount due and owing by Plaintiff for this debt.

68.   Defendant's addition of at least $429 in late charges to Plaintiff's alleged debt to Defendant was also a violation of numerous and multiple provisions of the FDCPA with respect to Defendant.

69.   The above-described communications and conduct from Defendant toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### *Plaintiff has Suffered Concrete Harm*

70.   The above-described collection conduct by Defendant in its efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair, and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

71.   These collection actions taken by Defendant, and the collection employees employed by it, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

72.   These violations by Defendant were knowing, willful, negligent and/or intentional, and it did not maintain procedures reasonably adapted to avoid any such violations.

73.   Defendant's collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with

respect to any action for the collection of any consumer debt.

74.     Defendant's deceptive, misleading, and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant's collection efforts because Plaintiff could not adequately respond to the Defendant's demand for payment of this debt.

75.     By demanding this $429.00 in writing on his Experian credit report, Defendant misrepresented the amount of the debt and the amount owed by Plaintiff in violation of the FDCPA.

76.     As a licensed debt collector in Minnesota, Defendant knew or should have known that it had no right to add impermissible collection fees under the FDCPA or fees that were not provided under the contract or otherwise permitted by law. See *Kojetin v. C U Recovery, Inc.,* 212 F.3d 1318 (8th Cir. 2000).

77.     On June 29, 2022, the Consumer Financial Protection Board again weighed in on the illegality of add-on collection fees like those sought by Defendant from Plaintiff:

> Section 808(1) of the FDCPA prohibits debt collectors, in relevant part, from "collect[ing]... *any* amount (*including* any interest, fee, charge, or expense incidental to the principal obligation)." As the Supreme Court has explained, the "word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" In addition, under its ordinary meaning, the term "including" typically indicates a partial list. The CFPB interprets the words "any" and "including" as used in section 808(1) consistent with their ordinary meanings. Accordingly, the CFPB clarifies that FDCPA section 808(1) and Regulation F, 12 CFR 1006.22(b), apply to any amount collected by a debt collector in connection with the collection of a debt, including, *but not limited to*, any interest, fee, charge, or expense that is incidental to the principal obligation.

…
The CFPB therefore interprets FDCPA section 808(1) to prohibit a debt collector from collecting any amount unless such amount either is expressly authorized by the agreement creating the debt (and is not prohibited by law) or is expressly permitted by law. That is, the CFPB interprets FDCPA section 808(1) to permit collection of an amount only if: (1) the agreement creating the debt expressly permits the charge and some law does not prohibit it; or (2) some law expressly permits the charge, even if the agreement creating the debt is silent.

https://files.consumerfinance.gov/f/documents/cfpb_convenience-fees_advisory-opinion_2022-06.pdf (footnotes omitted, italics in original) last accessed July 26, 2022.

78. The $429 incidental fees which Defendant demanded from Plaintiff through his credit report were not permitted by law and therefore were illegal add-on fees prohibited under the FDCPA.

79. The above-described communications and conduct from Defendant to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, and 1692f(1), amongst others.

### *Summary*

80. The above-described collection conduct by Defendant in its efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair, and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA and FCRA.

81. These collection actions taken by Defendant, and the collection employees employed by Defendant, were made in violation of multiple provisions of the

FDCPA and FCRA, including but not limited to all of the provisions of those laws cited herein.

82. These violations by Defendant were knowing, willful, negligent and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

83. Defendant's collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA and FCRA provide Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

84. Defendant's deceptive, misleading, and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant's collection efforts because Plaintiff could not adequately respond to the Defendant's demand for payment of this debt.

***Respondeat Superior Liability***

85. The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of Defendant who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

86. The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

87.     By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

88.     Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the state and federal law in its attempts to collect this debt from Plaintiff.

## **TRIAL BY JURY**

89.     Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## **CAUSES OF ACTION**

## **COUNT I.**

## **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

## **15 U.S.C. § 1692 *et seq.***

90.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

91.     The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

92.     As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

actual damages; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant herein.

## COUNT II.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

## 15 U.S.C. § 1681

93.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

94.   Defendant violated 15 U.S.C. §1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information that it furnished about Plaintiff.

95.   As a result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to credit rating, emotional distress, wasted time, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

96.   Defendant's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

97.   Alternatively, Defendant's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

98.   Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III.

## DECLARATORY RELIEF

99.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

100.  An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties in that Defendant contends that Plaintiff owes the alleged debt, and/or no legal obligation to pay this alleged existed, and whereas Plaintiff disputes this contention and contends that no such obligation exists.

101.  Plaintiff desires a judicial determination of Defendant's rights and duties, and a declaration as to the existence or non-existence of the alleged debt, and if it so exists, the extent of the liability of Plaintiff to Defendant, if any.

102.  A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain Plaintiff's rights and duties because Plaintiff's personal business affairs are seriously impaired, and Plaintiff is otherwise suffering a financial burden by this unsettled state of affairs.

103.  Plaintiff has already suffered from damage by Defendant's threats to attempts to collect it from Plaintiff and its damage Plaintiff's consumer credit reports.

104.  Declaratory relief is therefore appropriate in order to bring peace to the parties and prevent Defendant from causing further unwarranted and unjust damage to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

- for an award actual damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(1) against Defendant and for Plaintiff;

- for an award statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff;

- for an award of actual damages pursuant to 15 U.S.C. §1681n(a)(1)(a) and 1681o(a)(1);

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n;

- for an award of punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3) and 1681o(b);

- for a declaratory judgment holding that Plaintiff owes nothing on this alleged debt;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: December 27, 2022

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
333 Washington Ave No, Suite 300-9038

-20-

Minneapolis, MN 55401-1353
Telephone:  (612) 379-8800
pbarry@lawpoint.com

***Attorney for Plaintiff***

## **VERIFICATION OF COMPLAINT AND CERTIFICATION**

STATE OF MINNESOTA       )
                                   ) ss
COUNTY OF ANOKA          )

Pursuant to 28 U.S.C. § 1746, Plaintiff Robert Lennes verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on     Dec 25, 2022          _Robert M Lennes (Dec 25, 2022 22:31 CST)_
                                              Signature

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

Miller v. Lankow, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones.** The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary.  Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible.  For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible.  Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.**  You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand.  Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence.  You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI.  Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.**  You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.**  This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence.  You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control.  You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.**  In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective.  As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods.   Failure to use such methods imposes a significant threat of spoliation and data loss.  Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.**  Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.**  System metadata is information describing the history and characteristics of other ESI.  This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access.  Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files.  As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions.  If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.**  Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.**  If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics.  Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.  I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.  Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.**  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention.  Thank you for your anticipated cooperation in this vital matter.